**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Vanessa Clermont, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> National Tenant Network, Inc., <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : Civil Action No.: <br> : <br> : <br> : <br> : <br> : |

For this Class Action Complaint, Plaintiff Vanessa Clermont, by undersigned counsel, states as follows:

## INTRODUCTION

1.  The Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") strictly limits the category of persons to whom consumer reporting agencies like Defendant National Tenant Network, Inc. ("Defendant" or "NTN") can furnish consumer reports. 15 U.S.C. § 1681b(a). It requires that "[e]very consumer reporting agency shall maintain reasonable procedures designed . . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). The FCRA further provides that prior to furnishing consumer reports, consumer reporting agencies "shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report" and that "[n]o consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title." 15 U.S.C. § 1681e(a).

2.  Despite these prohibitions, NTN regularly prepares and sends consumer reports to

1

*unverified* third parties to drum up new business, even though the reports contain information that bears negatively on the subject of the report's reputation and creditworthiness and characterizes the subjects as "trouble tenants." *See, e.g.,* the following postcard NTN sent to Plaintiff's landlord:



3.  As set forth below, NTN indiscriminately mails these postcards to potential customers without first verifying the identity of the recipients or the purposes for which the postcards will be used, in violation of the FCRA.

4.  Through this class action Plaintiff seeks remedies under the FCRA on behalf of herself and others similarly situated who were the subject of NTN's illegal postcard consumer reports.

## PARTIES

5. Plaintiff, Vanessa Clermont, is an adult individual residing in West Orange, New Jersey and is a "consumer" as the term is defined by 15 U.S.C. § 1681a(c).

6. Defendant National Tenant Network, Inc. is an Oregon corporation with a principal place of business at 4800 Meadows Road, Suite 300, Lake Oswego, Oregon 97035. During the FCRA statute-of-limitations period, Defendant was a "consumer reporting agency" as defined by the FCRA, and was regularly engaged in the business of assembling, evaluating, and disbursing public-record information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises out of Defendants' violations of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA").   In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are each citizens of different states.

8. Personal jurisdiction and venue are proper in this District as the acts and omissions that gave rise to Plaintiff's claims occurred in this District.

## THE FCRA

9. Under the FCRA, a "consumer report" "means any written, oral, or other communication of any information by a consumer reporting agency bearing on consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal

characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

10. Consumer reporting agencies may only "furnish a consumer report" under a limited number of circumstances "and no other." 15 U.S.C. § 1681b(a). Those limited circumstances are:

    a. "In response to the order of a court" or a subpoena (15 U.S.C. § 1681b(a)(1));

    b. "In accordance with the written instructions of the consumer to whom it relates" (15 U.S.C. § 1681b(a)(2));

    c. "To a person which [the consumer reporting agency] has reason to believe—

        i. (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

        ii. (B) intends to use the information for employment purposes; or

        iii. (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

        iv. (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

        v. (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

        vi. (F) otherwise has a legitimate business need for the information— (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of

       the account.

    vii. (G) executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards." (15 U.S.C. § 1681b(a)(3));

  d. "In response to a request by the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency)" (15 U.S.C. § 1681b(a)(4));

  e. "To an agency administering a State plan under section 654 of title 42 for use to set an initial or modified child support award." (15 U.S.C. § 1681b(a)(5)); or

  f. "To the Federal Deposit Insurance Corporation or the National Credit Union Administration" (15 U.S.C. § 1681b(a)(6)).

11. Further, the FCRA requires that "Every consumer reporting agency shall maintain reasonable procedures designed . . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title." 15 U.S.C. § 1681e(a).

## FACTUAL ALLEGATIONS

### a. Defendant's business

12. Defendant National Tenant Network describes itself as "a consumer reporting agency that assembles and evaluates consumer information and reports that information to

subscribers for the purpose of residential screening."[1]   Its pitch to property managers is that its "comprehensive suite of secure screening services give you the tools to select the best tenants for your property, eliminate potentially high-risk tenants and balance risk."[2]  To that end, it regularly provides reports of potential tenants to subscribers through the mails and/or electronically.

13. NTN claims to consumers that it only discloses consumer reports to those who have been "authorized to access the information in your consumer file."[3]

14. Moreover, NTN has recognized since at least 2016 that under the FCRA "credit-reporting agencies and tenant-screening companies [must] make every responsible effort to verify that customers who wish to purchase retail credit reports have a legitimate purpose for doing so" and "[b]oth the credit bureaus and companies who are resellers of the bureaus' data are responsible for compliance."[4]

15. However, in practice Defendant prepares and sends consumer reports to prospective customers to solicit new business without certifying or investigating whether the recipients have a legitimate purpose for the information and without obtaining prior authorization from the subject of the report.

16. Indeed, after Plaintiff signed a lease to reside in her current residence, Defendant sent the below postcard (the "Postcard Consumer Report") addressed to Plaintiff's landlord to solicit her as an NTN customer.   The Postcard Consumer Report stated on its face that an "eviction filing" was filed against Plaintiff, included information about the alleged filing, and

---

[1] https://ntnonline.com/consumers/ (last visited June 28, 2023).
[2] https://ntnonline.com/property-managers/ (last visited June 28, 2023).
[3] https://ntnonline.com/consumers/ (last visited June 28, 2023).
[4] https://ntnonline.com/federal-fair-credit-reporting-act/ (last visited June 28, 2023).

characterized Plaintiff as a "trouble tenant[ ]":



17. After disclosing information and making statements that bear negatively on Plaintiff's reputation and creditworthiness, the Postcard Consumer Report goes on to tout that NTN "would have warned you about trouble tenants like [Plaintiff] BEFORE they become YOUR residents" and implores the recipient to call Defendant's "Sales Team" to begin purchasing services from NTN so that they can screen and deny housing to potential tenants.

18. The Postcard Consumer Report is prepared from a template. Aside from the subject's name and eviction information included, the language, layout and imagery are otherwise identical on each Postcard Consumer Report.

19. NTN has sent near-identical Postcard Consumer Reports to thousands of other prospective customers to solicit new business.

20. Prior to sending the Postcard Consumer Reports concerning Plaintiff and putative class members, NTN did not require the recipients of the postcards to identify themselves or certify the purposes for which the information included in the Postcard Consumer Reports would be used.

21. Prior to sending the Postcard Consumer Reports, NTN took no efforts to verify the purpose for which the Postcard Consumer Reports would be used.

22. Prior to sending the Postcard Consumer Reports, NTN did not obtain the subject of the report's authorization.

23. NTN is aware that the information it includes in its Postcard Consumer Reports may be used as a factor in determining the subject of the reports' eligibility for housing and credit.

24. However, as a practice and policy NTN does not seek the subjects of those reports' authorization prior to sending the postcards, and NTN does not determine whether the recipients of the reports will use the information contained within the reports for legitimate purposes.

25. Plaintiff and putative class members have been damaged because of Defendant's unlawful actions, including in the form of harm to reputation and emotional distress in the form of anxiety, frustration, embarrassment and humiliation.

## CLASS ACTION ALLEGATIONS

A. **The Class**

26. Plaintiff brings this action on her own behalf and on behalf of the following Class

of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

>**Class:** All persons who were the subject of Defendant National Tenant Network, Inc.'s postcards, substantially similar to the postcard concerning Plaintiff, sent during the FCRA statute of limitations period, 15 U.S.C. § 1681p.

27.  Any legal entity, Defendant and its employees or agents are excluded from the Class.

### B. Numerosity

28.  Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that the Class are comprised of at least thousands of members and are geographically dispersed throughout the country.

### C. Common Questions of Law and Fact

29.  There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a.  Whether NTN maintained reasonable procedures designed to limit the furnishing of consumer reports to the purposes set forth under section 1681b of the FCRA;

   b.  Whether NTN required that recipients of the Postcard Consumer Reports identify themselves and certify the purposes for which the information included in the reports would be used prior to sending the Postcard Consumer Reports;

   c.  Whether NTN recklessly violated the FCRA; and

   d.  The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n.

### D. Typicality

30. The Plaintiff's claims are typical of the claims of the Class as all class members were similarly affected by Defendant's unlawful conduct described above in violation of the FCRA. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

### E. Protecting the Interests of the Class Members

31. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

### F. Proceeding Via Class Action is Superior and Advisable

32. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

33. Defendant has acted, and refused to act, on grounds generally applicable to the

Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.

34. Plaintiff and the Class members incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

35. Defendant National Tenant Network regularly assembles and evaluates consumer information and reports that information to subscribers for the purpose of residential screening for a fee. Thus it is "consumer reporting agency" pursuant to 15 U.S.C. § 1681a(f), which "for monetary fees [or] dues [. . .] regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

36. In the regular course of its business, NTN prepares consumer reports concerning Plaintiff and putative class members, as defined in 15 U.S.C. § 1681a(d), in the form of Postcard Consumer Reports.

37. NTN furnishes the Postcard Consumer Reports to potential customers such as Plaintiff's landlord to solicit new business despite the fact that (1) the subject of the reports have not authorized NTN to furnish the reports; (2) NTN has not made any efforts to verify the identity of the prospective users of its Postcard Consumer Reports or the recipient's proposed uses for the Postcard Consumer Reports, prior to furnishing the Postcard Consumer Reports; and (3) the users of the Postcard Consumer Reports have not identified themselves and certified their intended use of such information. In failing to do so, NTN failed to maintain reasonable procedures designed to limit the furnishing of its consumer reports to the purposes listed

under section 1681b of the FCRA.

38. As a result, Plaintiff and class members who were the subjects of the Postcard Consumer Reports have been damaged including in the form of a violation of their rights, harm to reputation and emotional distress in the form of anxiety, frustration, embarrassment and humiliation.

39. NTN's above-described conduct violates 15 U.S.C. §§ 1681b(a) and 1681e(a), entitling Plaintiff and members of the class to actual damages or statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681o and 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o .

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

  a. An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;
  b. Statutory damages pursuant to 15 U.S.C. § 1681n;
  c. Actual damages pursuant to 15 U.S.C. § 1681n or 15 U.S.C. § 1681o;
  d. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);
  e. Attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and
  f. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: June 30, 2023                                    PLAINTIFF, Vanessa Clermont

                                                        By:   */s/ Sergei Lemberg*
                                                                  Sergei Lemberg
                                                                  LEMBERG LAW, LLC
                                                                  43 Danbury Road
                                                                  Wilton, CT 06897
                                                                 Telephone: (203) 653-2250
                                                                 Facsimile:  (203) 653-3424
                                                                  slemberg@lemberglaw.com
                                                                  *Attorneys for Plaintiff*